IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TUNYA HIGGINS,                          §
                                        §
                Plaintiff,              §
                                        §
V.                                      §          No. 3:12-cv-5297-N-BN
                                        §
BANK OF AMERICA, N.A., ET AL.,          §
                                        §
                Defendants.             §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial

management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the

District Court. *See* Dkt. No. 3. The undersigned magistrate judge issues the following

findings of fact, conclusions of law, and recommendation:

**Background**

Plaintiff Tunya Higgins bought a house located in Seagoville, Texas in 2008.

Defendant Summit Funding, Inc. ("Summit") was the original lender. At the closing,

Summit's representatives told Plaintiff that her monthly payments would not exceed

$1,300. *See* Dkt. No. 1-1 at 6-7.

Approximately two years later, Plaintiff was contacted by Defendant Bank of

America, N.A. ("Defendant"), who claimed it had acquired the loan and demanded

monthly payments exceeding $1,700. Plaintiff was unable to meet the new $1,700

monthly payment amount and subsequently became delinquent in her mortgage. *See*

*id.* at 7. Plaintiff hired an attorney, who filed a dispute of validity of the alleged debt with Defendant on November 9, 2011. Defendant did not respond to the request for verification of the validity of its authority to demand payment of either the alleged debt or the original debt. *See id.*

On November 29, 2012, Plaintiff sued Defendant and Summit in the 134th District Court of Dallas County, Texas, and sought injunctive relief to prevent foreclosure on her home.[1] *See id.* at 5-15. On November 30, 2012, the Court granted a temporary restraining order ("TRO") enjoining foreclosure and set a temporary injunction hearing for December 13, 2012. *See id.* at 21-22. The parties filed a Tex. R. Civ. P. 11 Agreement on December 12, 2012, in which they agreed to pass on the injunction hearing scheduled for the next day and to extend the TRO for fourteen days. *See id.* at 31.

Defendant removed the case to this court on December 31, 2013, on the basis of diversity and federal question jurisdiction, and filed its Fed. R. Civ. P. 12(b)(6) motion to dismiss on January 14, 2013. *See* Dkt. Nos. 1 & 9. In response, Plaintiff filed a Special Appearance Challenging Personal Jurisdiction. *See* Dkt. No. 11. Plaintiff's response to the motion to dismiss is included in her brief in support of her Special Appearance Challenging Personal Jurisdiction. *See* Dkt. No. 12 at 4-12.

Plaintiff also filed a motion for leave to amend her pleadings, seeking leave to

---

[1]This is the second lawsuit Plaintiff has filed to prevent foreclosure on the property at issue. *See Higgins v. Bank of America NA*, No. 3:12-cv-3522-G (N.D. Tex. 2012) (dismissed without prejudice).

2

file a document entitled Plaintiff's Response to Defendant's Response to Plaintiff's Special Appearance Challenging Personal Jurisdiction. *See* Dkt. Nos. 19 & 20. This response is, in fact, a new motion to remand the case to state court based on allegations that Defendant's notice of removal was not timely filed. *See* Dkt. No. 19 at 1-3. Defendant has not filed any response to Plaintiff's motion for leave or the misstyled motion to remand. The undersigned hereby GRANTS Plaintiff's motion for leave [Dkt. No. 20] to file this document and will herein address Plaintiff's additional arguments for remand to state court.

Summit apparently has not been served and has not appeared.

In her state court petition, Plaintiff asserts claims for violations of the Texas Deceptive Trade Practices Act ("DTPA") and Texas Debt Collection Act ("TDCA"), common law fraud, fraud in a real estate transaction, and breach of contract. Dkt. No. 1-1 at 7-8. In its motion to dismiss, Defendant contends that all of Plaintiff's claims are barred by the statute of frauds and that her DTPA, common law fraud, statutory fraud, and TDCA claims are barred by the economic loss doctrine. Defendant also contends that Plaintiff has failed to state a claim for statutory fraud and violations of the DTPA and TDCA. Dkt. Nos. 9, 10. In her Special Appearance Challenging Personal Jurisdiction, Plaintiff asserts that this case was improperly removed. *See* Dkt. Nos. 11 & 12.

The undersigned now determines that Defendant's motion to dismiss [Dkt. No. 9] should be granted in part and denied in part, and that Plaintiff's Special Appearance

Challenging Personal Jurisdiction [Dkt. No. 11] and her motion to remand [Dkt. No. 19] should be denied. Plaintiff's motions or requests for hearing on her various filings [Dkt. Nos. 11, 14, & 21] are DENIED. *See* N.D. Tex. L. Civ. R. 7.1(g) ("Unless otherwise directed by the presiding judge, oral argument on a motion will not be held.").

## Legal standards

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Fed. R. Civ. P. 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and,

while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Id.*

## Analysis

### I.

Defendant properly removed this case, and this Court has jurisdiction.

In her Special Appearance Challenging Personal Jurisdiction, Plaintiff contests removal of this case to federal court and seeks remand to state court. Plaintiff contends removal was improper because Defendant failed to make a special appearance in state court before it filed the Tex. R. Civ. P. 11 agreement. Thus, she argues that Defendant submitted to the jurisdiction of the state court when it filed the Rule 11 agreement, and that, as a result, it was precluded from thereafter removing the case to federal court.

Plaintiff's arguments are misguided, however, because one of the bases for removal was diversity jurisdiction. *See* 28 U.S.C.A. §§ 1332, 1441(b). Plaintiff does not challenge whether there is diversity of citizenship, and the existence of state court jurisdiction over Defendant does not preclude Defendant from removing this lawsuit between Plaintiff, a citizen of Texas, Defendant, a citizen of North Carolina, and Summit, a citizen of California. *See* Dkt. No. 1. There is, therefore, complete diversity,

and Defendant has further established an amount in controversy that exceeds 28 U.S.C. § 1332(d)'s threshold requirement. *See* Dkt. No. 1 at 2-5; Dkt. No. 1-1, Ex. C.

The propriety of this Court's subject-matter jurisdiction over this action, however, has nothing to do with Defendant's submitting to the state court as having personal jurisdiction over it. "Before removing to federal court, a defendant may lose his right to challenge personal jurisdiction if he has taken any action in the state court that under state law would waive that right." *Alliantgroup, L.P. v. Feingold*, Civ. A. No. H-09-0479, 2009 WL 1109093, at *5 (S.D. Tex. Apr. 24, 2009). But Defendant is not raising a lack of personal jurisdiction in this Court, *see* Dkt. No. 18 at 3, and waiving the right to contest personal jurisdiction does not equate to waiving the right to remove to federal court a case over which this Court would have original, subject-matter jurisdiction.

In her Special Appearance Challenging Personal Jurisdiction, Plaintiff also alleges that Defendant misrepresented its intention to resolve the underlying dispute in an effort induce her to sign the Rule 11 agreement. However, she fails to explain how this alleged misrepresentation deprives the federal court of subject-matter jurisdiction or otherwise relates to any of the requirements for diversity jurisdiction.

Plaintiff also cites to Fed. R. Civ. P. 12(b)(2) in her Special Appearance Challenging Personal Jurisdiction and her request for a hearing thereon, *see* Dkt. No. 11 at 1; Dkt. No. 14 at 1, but her filings make clear that she is not seeking dismissal under Rule 12(b)(2) based on any alleged lack of personal jurisdiction over Plaintiff, *see*

Dkt. Nos. 12 & 19. And Plaintiff's invocation of Rule 12(b)(2) is unavailing as a matter of law, in any event. She is the plaintiff in this action, and Rule "12(b)(2) provides a right to dismissal of claims against <u>a defendant</u> when personal jurisdiction is lacking." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 836 (E.D. La. 2012) (emphasis added); *accord* FED. R. CIV. P. 12(b)(2) ("[A] party may assert the following defenses by motion: ... (2) lack of personal jurisdiction....").

In Plaintiff's Response to Defendant's Response to Plaintiff's Special Appearance Challenging Personal Jurisdiction [Dkt. No. 19], Plaintiff seeks remand of the case to state court based on allegations that Defendant's notice of removal was not timely filed. Plaintiff's request for remand should be denied for two reasons.

First, this motion to remand was not filed within 30 days of the filing of Defendant's notice of removal, *see* Dkt. Nos. 1 & 19, and failure to comply with the 30-day removal requirement under 28 U.S.C. § 1446(b) is a non-jurisdictional, procedural defect that is waived if not made in a motion to remand filed, pursuant to 28 U.S.C. § 1447(c), within 30 days of removal, *see State of La. v. Sparks*, 978 F.2d 226, 233 n.11 (5th Cir. 1992); *accord Belser v. St. Paul Fire & Marine Ins. Co.*, 965 F.2d 5, 8 (5th Cir. 1992). Plaintiff acknowledges that she is relying on a procedural defect in removal. *See* Dkt. No. 19 at 2. While Plaintiff relies on an inapposite 1993 decision by a Wisconsin federal district court, *see id.* at 3, this Circuit's law makes clear that "a district court has no discretion to remand to state court when a motion to do so is grounded on improper removal procedures and that motion is not made within thirty days following

*filing*: Under such circumstances, the objection to remove jurisdiction resulting from a defect in the removal procedure is waived," *Pavone v. Miss. Riverboat Amusement Corp.*, 52 F.3d 560, 566 (5th Cir. 1995) (emphasis in original). Plaintiff's *pro se* status does not change this rule or permit the Court to extend the period of time for moving to remand on the basis of non-jurisdictional defects. *See, e.g.*, *Haywood v. Tribeca Lending Corp.*, No. 2:06-cv-108-P-A, 2006 WL 2708578, at *2 (N.D. Miss. Sept. 20, 2006); *see generally Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.").

Second, even if the allegation of untimely removal was not waived, Plaintiff's argument fails as a matter of law. Plaintiff's argument depends on a misreading of Section 1446(b)(1), which provides: "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. .... Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28

8

U.S.C. §§ 1446(b)(1), (b)(3). Plaintiff asserts that Defendant was required to remove within 30 days of being notified of a hearing on Plaintiff's TRO on November 29, 2012. But Defendant has alleged that it was not properly served prior to removal, *see* Dkt. No. 1 at 2, and Plaintiff has not contested that allegation. Instead, she relies on Section 1446(b)(3)'s provision for removal "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

However, Section 1446(b)'s "30 day period in no event begins to run prior to service of process on the defendant." *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 390 n.12 (5th Cir. 2000).[2] The Fifth Circuit has made clear that Section 1446(b)(1) "applies to cases which are removable as initially filed" and that Section 1446(b)(3) "applies to those cases which are not removable originally but become removable at a later time." *Johnson v. Heublein Inc.*, 227 F.3d 236, 241 (5th Cir. 2000). Section 1446(b)(3) "provides that, under the there stated circumstance, the starting date of the thirty day period within which the notice of removal must be filed shall be *later* than the date provided in the first paragraph. Thus, [Section 1446(b)(3)] states that '[i]f the case stated by the initial pleading is not removable' then the thirty day period commences

---

[2] Section 1446(b) was amended effective January 6, 2012, but the amendments do not substantively affect this analysis. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112–63, §§ 103, 105, 125 Stat. 758 (2011). What is now Section 1446(b)(1) was previously codified as the first paragraph of the prior version of Section 1446(b), and what is now Section 1446(b)(3) was previously codified as the second paragraph of the prior version of Section 1446(b).

upon 'receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.' It is wholly evident that the purpose of [Section 1446(b)(3)] is to *extend* the time for filing notice of removal under the stated circumstance, and *not* to in any event *shorten* it to less than it would be under the first paragraph." *Badon*, 224 F.3d at 390.

As such, controlling law makes clear that Defendant's removal clock never began running in state court insofar as Plaintiff did not properly serve Defendant with process. As such, Plaintiff's argument invoking Section 1446(b)(3) based on the timing of Plaintiff's TRO hearing fails as a matter of law.

## II.

Defendant characterizes all of Plaintiff's claims as being based on her assertion that the original lender promised her monthly payments would not exceed $1,300 and that this representation created an obligation on Defendant to keep her monthly payments, including amounts due for property taxes and insurance, below that amount. Defendant argues that this purported oral agreement is unenforceable under the Statute of Frauds.

Under Texas law, a "loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. COM. CODE § 26.02(b) (Vernon 1999). Even though Plaintiff

10

pleads that she purchased the home "by way of a loan," she makes no allegations concerning the amount of the loan or the balance due on the loan, and the loan documents are not attached to her state court petition. Defendant provides public records from the Dallas Central Appraisal District in which Plaintiff's home is valued at $125,040 for the year 2012, *see* Dkt. No. 1-1 at 42-45, but those records do not establish, for Rule 12(b)(6) purposes, whether the amount involved in the loan exceeds $50,000 or whether the alleged oral promise that Plaintiff's monthly payments would not exceed $1,300 was for a total amount in excess of $50,000.

There is nothing in Plaintiff's petition "to demonstrate that section 26.02, which applies only to loan agreements exceeding $50,000 in value, applies," and "[t]he statute of frauds is an affirmative defense, and thus its application must be conclusively established in the pleadings to support a dismissal under Rule 12(b)(6)." *Lopez v. JP Morgan Chase Bank, N.A.*, Civ. A. No. SA-11-CA-0936-XR, 2012 WL 2726762, at *3 (W.D. Tex. July 9, 2012). Defendant's brief in support of its motion to dismiss cites to a Deed of Trust and asserts that Plaintiff executed a note in the amount of $163,917, but neither the note nor the deed of trust – nor, for that matter, any other evidence submitted by either party – was attached to Defendant's Notice of Removal or motion to dismiss papers. *See* Dkt. No 10 at 3, 4; *compare* Dkt. Nos. 1, 9, & 10.

On the record before the Court at this stage of the proceedings, the undersigned cannot conclude that the statute of frauds bars Plaintiff's claims.

11

III.

Plaintiff alleges Defendant breached the original lender's promise that her loan payments would not exceed $1,300. Defendant's only attack on Plaintiff's breach of contract claim is that it is barred by the statute of frauds. However, as discussed above, the statute of frauds does not bar Plaintiff's claims at this stage of the proceeding. Plaintiff's breach of contract claim should not be dismissed.

IV.

Plaintiff alleges a claim under Section 27.01 of the Texas Business and Commerce Code, which provides a statutory cause of action for fraud in real estate and stock transactions. *See* TEX. BUS. & COM. CODE § 27.01 (Vernon 1983). Section 27.01 only applies to misrepresentations of material fact made to induce another to enter into a contract for the sale of land or stock. A loan transaction, even if secured by land, is not considered to come under the statute. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343 (5th Cir. 2008); *Greenway Bank & Trust v. Smith,* 679 S.W.2d 592, 596 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Plaintiff's response does not join issue with this legal deficiency in her pleading – rather than addressing statutory fraud, she raises promissory estoppel as an exception to the statute of frauds. *See* Dkt. No. 12 at 11-12. But, because Plaintiff's claim is based only on allegations of misrepresentations made in the context of a loan and its alleged modification, and not on any kind of real estate transaction between the parties, Plaintiff's statutory fraud claim fails. Plaintiff's claim for fraud in a real estate transaction should be dismissed with prejudice. *See*

12

*Brown v. Texas A&M Univ.*, 804 F.2d 327, 334 (5th Cir. 1986) (leave to amend a second time is unnecessary where a plaintiff's alleged facts could not, as a matter of law, support the alleged claim, "[e]ven with every possible fact and inference resolved in favor of the plaintiff"); *Jacquez v. Procunier*, 801 F.2d 789, 791-92 (5th Cir. 1986) (leave to allow a pro se plaintiff to amend is not required where "even the most sympathetic reading of plaintiff's pleadings uncovers no theory and no facts that would subject the present defendants to liability" and it is clear that the plaintiff has already pleaded his "best case").

V.

Plaintiff alleges Defendant violated the DTPA by: (1) advertising goods or services with intent not to sell them as advertised; (2) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and (3) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. TEX. BUS. & COM. CODE §§ 17.46(b)(9), (12), & (24) (Vernon 2007). Plaintiff also alleges that Defendant breached "the express warranty of full disclosure concerning property taxes and mortgage payments during the time of closing on the subject loan," which she contends is actionable under the DTPA. Dkt. No. 1-1 at 7-8.

Defendant argues that Plaintiff fails to state a claim under the DTPA, including

13

by invoking the TDCA as a "tie-in" statute, because she is not a "consumer" as defined by the DTPA. *See Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006) (in all cases, a plaintiff must qualify as a "consumer" in order to have standing to bring an action under the DTPA). The elements of a cause of action under the DTPA are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)). To qualify as a consumer, "a person must have sought or acquired goods or services by purchase or lease" and "the goods and services purchased or leased must form the basis of the complaint." TEX. BUS. & COM. CODE § 17.45(4)*; Cameron v. Terrell & Garrett, Inc.* 618 S.W.2d 535, 539 (Tex. 1981).

Since the lending of money is not a good or service, a borrower whose sole objective is to get a loan does not become a consumer under the DTPA. *See Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-75 (Tex. 1980)). Moreover, "[a]lthough one who borrows money to buy a house can be a consumer under the DTPA because that person's objective is to buy a home, subsequent actions related to mortgage accounts – for example, extensions of further credit or modifications of the original loan – do not satisfy the 'goods and services' element of the DTPA." *Swim v. Bank of Am.*, No. 3:11-cv-1240-M, 2012 WL 170758, at *6 (N.D. Tex. Jan. 20, 2012).

14

Here, Plaintiff's allegations all relate to actions related to her mortgage loan and to allegations regarding modifications to that loan and not to the house itself for which she sought the loan. *See* Dkt. No. 22. Accordingly, Plaintiff is not a consumer under the DTPA. *See Walker*, 970 F.2d at 123; *Olufemi-Jones v. Bank of Am., N.A.*, No. 3:12-cv-3428-L, 2013 WL 1482544, at *2 (N.D. Tex. Apr. 10, 2013). Plaintiff has failed to state a DTPA claim as a matter of law, and Plaintiff's claim should be dismissed with prejudice. *See Brown*, 804 F.2d at 334; *Jacquez*, 801 F.2d at 791.

VI.

Defendant asserts that Plaintiff's common law fraud claim is barred by the economic loss rule. Under Texas law, if a tort claim arises solely from the parties' contractual relationship, the tort claim is not allowed. *See DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625-26 (N.D. Tex. 2011). Thus, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991)). "That is, 'a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim.'" *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-cv-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012) (quoting *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App. – Houston [1st Dist.] 2007, pet. denied)). "Thus, the rule restricts contracting parties to contractual remedies for economic losses associated with their relationship, 'even

when the breach might be reasonably viewed as a consequence of a contracting party's negligence.'" *Id.* (quoting *Lamar Homes, Inc.*, 242 S.W.3d at 13). "The focus of the rule is on determining whether the injury is to the subject of the contract itself." *Id.* (internal quotation marks omitted). "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: (1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and (2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney Corp., Inc.*, No. 3:05-cv-2499-L, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45-47 (Tex. 1998)); *see also DeLanney*, 809 S.W.2d at 494-95. The burden is on the plaintiff to establish evidence of an independent injury. *See McDaniel*, 2012 WL 6114944, at *7 (citing *Esty v. Beal*, 298 S.W.3d 298, 302 (Tex. App. – Dallas 2009, no pet.)).

However, the Texas Supreme Court has stated that fraudulent inducement claims are not subject to the economic loss rule. *See Formosa Plastics Corp. USA,* 960 S.W.2d at 47 ("[T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract."); *accord Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011). Fraudulent inducement "'is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as

16

part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties.'" *Bohnsack v. Varco, LP*, 668 F.3d 262, 277 (5th Cir. 2012) (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001)). While many of Plaintiff's allegations are difficult to discern – particularly as they may (or may not) be directed to Defendant as opposed to its co-defendant Summit, the original lender – for these purposes Plaintiff appears to be alleging fraudulent inducement as to Defendant's "intend[ing] to induce Plaintiff to enter into the transaction made the basis of this suit by such concealment or failure to disclose." Dkt. No. 1-1 at 9. Defendant itself characterizes Plaintiff as alleging "that the original lender misrepresented the terms of the mortgage agreement," Dkt. No. 10 at 5, and Plaintiff's response to Defendant's motion to dismiss suggests that her claim is for fraudulent inducement, *see* Dkt. No. 12 at 11.

Accordingly, the undersigned cannot conclude, in the context of a Rule 12(b)(6) motion, that Plaintiff's fraud claim, as pleaded, is defeated as a matter of law by the economic loss rule. Defendant does not otherwise challenge the sufficiency of Plaintiff's allegations in support of its common-law fraud claim; therefore, without definitively resolving whether Plaintiff's fraud claim is even alleged against Defendant – because Defendant's argument for dismissal do not require such a determination – the undersigned concludes that the motion to dismiss Plaintiff's common-law fraud claim should be denied.

VII.

In her state court petition, with regard to the TDCA, Plaintiff states only that "Defendants or persons acting in concert with Defendants engaged in false, misleading or deceptive acts as provided by the Debt Collection Act (Texas Finance Code, Section 392.404(a)." Dkt. No. 1-1 at 8. Plaintiff includes this statement in conjunction with her DTPA claim and cites to Texas Finance Code § 392.404(a), which provides that a violation of the TDCA is a deceptive trade practice under the DTPA. TEX. FIN. CODE § 392.404(a) (Vernon 1997). Plaintiff fails to assert any facts demonstrating a violation of the Texas Debt Collection Act, and, as a result, fails to state a claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Defendant also argues that Plaintiff's TDCA claim is barred by the economic loss rule. Courts have applied the economic loss rule to TDCA claims premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender. *See McCartney v. CitiFinancial Auto Credit, Inc.*, No. 4:10-CV-424, 2010 WL 5834802, at *5 (E.D. Tex. Dec.14, 2010), *rec. adopted,* 2011 WL 675386 (E.D. Tex. Feb. 16, 2011) (explaining that the plaintiff's allegations of misrepresentation by attempting to collect a debt in violation of the agreement against CitiFinancial stated a breach of contract but not a TDCA claim); *Hicks v. Chase Home Fin. LLC*, No. 3:09-cv-1652-G, 2010 WL 4274745, at *7 (N.D. Tex. Oct.21, 2010) (judgment vacated following entry of agreed final judgment) (dismissing on summary judgment the plaintiff's claims against Chase

18

under the TDCA for alleged misrepresentations of the amount of the debt and attempts to collect fees not authorized by the modification agreement because they sounded in contract); *Singh v. JPMorgan Chase Bank, N.A.*, No. 4:11-CV-607, 2012 WL 3904827, at *7 (E.D. Tex. July 31, 2012), *rec. adopted*, 2012 WL 3891060 (E.D. Tex. Sep.7, 2012) (holding that because the Deed of Trust governed the conduct the plaintiff alleged violated the TDCA, the plaintiff could not recover under a tort theory). However, here, Plaintiff's only allegations in support of a TDCA claim involve a misrepresentation at the closing of Plaintiff's loans and, so her claim, as alleged (such as it is), does not appear to governed by the loan documents themselves and is not "a breach of contract claim cloaked in the lexicon of the TDCA." *Hicks*, 2010 WL 4274745, at *7. As alleged, then, the undersigned cannot conclude at this stage that Plaintiff's claim is barred by the economic loss rule as a matter of law. *Compare Enis v. Bank of America, N.A.*, No. 3:12-cv-295-D, 2013 WL 1721961, at *7 n.13 (N.D. Tex. Apr. 22, 2013); *Caldwell v. Flagstar Bank, FSB*, No. 3:12-cv-1855-K-BN, 2013 WL 705110, at *11-*12 (N.D. Tex. Feb. 4, 2013), *rec. adopted*, 2013 WL 705876 (N.D. Tex. Feb. 26, 2013).

Plaintiff's TDCA claim should be dismissed without prejudice. In light of Plaintiff's *pro se* status, and because it is not clear that Plaintiff has already pleaded her "best case," Plaintiff should be given an opportunity to replead her claim under the TDCA. *See Jacquez*, 801 F.2d at 791; *Holley v. Bank of Am. Nat'l Ass'n*, No. 3:10-cv-2261-B, 2011 WL 1303252 at *2 (N.D. Tex. Apr. 4, 2011)

19

## Recommendation

Defendant's motion to dismiss [Dkt. No. 9] should be granted in part and denied in part. Plaintiff's breach of contract and common-law fraud claims should not be dismissed; however, her statutory claims of fraud in a real estate transaction and violation of the Texas Deceptive Trade Practices Act should be dismissed with prejudice, and her claim for violation of the Texas Debt Collection Act should be dismissed without prejudice. As to Plaintiff's claim that should be dismissed without prejudice, the Court should grant Plaintiffs 21 days from the date of any order adopting these Findings, Conclusions, and Recommendation in which to file an amended complaint and should order that, if Plaintiffs fail to do so, the claim will be dismissed with prejudice without further notice. Plaintiff's Special Appearance Challenging Personal Jurisdiction [Dkt. No. 11] and her motion to remand [Dkt. No. 19] should be denied.

Further, as explained herein, Plaintiff's motions or requests for hearing on her various filings [Dkt. Nos. 11, 14, & 21] are DENIED, but Plaintiff's motion for leave [Dkt. No. 20] to file Plaintiff's Response to Defendant's Response to Plaintiff's Special Appearance Challenging Personal Jurisdiction [Dkt. No. 19] is GRANTED.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 26, 2013

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE